1

2

3

4

**NOT FOR CITATION**

5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7

8

TAMMIE DAVIS, et al.,

Plaintiffs,

9

v.

10

COLE HAAN, INC., et al.,

11

Defendants.

Case No.  11-cv-01826-JSW

**ORDER GRANTING, IN PART, RENEWED MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS**

Re: Docket No. 104

12

13

14       Now before the Court for consideration is the renewed motion for an award of attorneys'

15   fees, costs, and incentive awards, filed by Plaintiffs, Tammie Davis, Valeria Lletget, and Stefani

16   Concepcion.  The Court has considered the parties' papers, the supplemental briefs ordered by the

17   Court, relevant legal authority, and the record in this case, and the Court hereby GRANTS, IN

18   PART, Plaintiffs' motion.

19                                 **BACKGROUND**

20       On October 11, 2013, the parties appeared before the Court for a fairness hearing in

21   connection with a class action settlement and a request by Class Counsel and the named Plaintiffs

22   for attorneys' fees, costs, and incentive awards.  As part of the settlement, Defendants agreed to

23   provide class members with two forms of "Settlement Vouchers." [1]  (Docket No. 70-2, Declaration

24   of Gene J. Stonebarger in Support of Motion for Preliminary Approval ("Stonebarger Decl."), ¶ 2,

25   and Docket No. 70-3, Stonebarger Decl., Ex. 1 (Settlement Agreement and Release, §§ 1.23, 2.1).)

26

27   _____

28   [1]      In their renewed motion for fees, Plaintiffs distinguish between the two forms of
Settlement Vouchers and refer to the 30% voucher as a coupon.  The Court continues to use the
terms set forth in the Settlement Agreement and Release.

United States District Court
Northern District of California

1   Specifically, class members would have the option of receiving a voucher for $20 off any

2   merchandise purchase ("the $20 Voucher") or a voucher for 30 percent off any merchandise

3   purchase (the "30% Voucher").  Both types of Settlement Vouchers expired within six months,

4   could only be redeemed in Cole Haan's California stores, were transferable, could not be

5   combined with any other promotional coupon or voucher, and were not redeemable for cash,

6   including cash back.  (*Id.*)

7         Prior to the final approval hearing, Sharon Lee ("Ms. Lee) objected to the settlement and

8   the request for fees on the basis that the settlement was a "coupon" settlement under the Class

9   Action Fairness Act ("CAFA") and subject to the provisions of 28 U.S.C. section 1712.  (*See*

10   Docket No. 77, Objections.)[2]

11         Following the final approval hearing, the Court determined that CAFA governed Plaintiffs'

12   motion for fees and that the settlement was a coupon settlement.  (Docket No. 90, Order

13   Regarding Motions for Final Approval and for Attorneys' Fees, Litigation Costs, and Incentive

14   Awards, dated October 21, 2013 ("October 21 Order"), at 2:15-5:1.)  Class Counsel had moved for

15   fees using a lodestar method, and the Court denied the motion.  Because the Court could not

16   "determine whether a contingency fee award would be reasonable in the absence of evidence

17   showing the actual redemption value of the coupons awarded," the ruling was "without prejudice

18   to Class Counsel filing a renewed motion for attorneys' fees after the redemption value of the

19   coupons is determined."  (*Id.* at 5:2-5.)  The Court also denied, without prejudice, Plaintiffs'

20   requests for costs and incentive awards, because Plaintiffs had not provided an adequate

21   evidentiary foundation to support the requests.  (*Id.* at 5:6-6:8.)

22         At the time of the final approval hearing, the record suggested that ninety-one (91) class

23   members had submitted claim forms to receive the $20 Voucher.  (Docket No. 78-8, Declaration

24   of Jennifer M. Keough Regarding Notice Dissemination, Claims Administration, and Internet

25   Posting, ¶ 6.)  However, the Settlement Administrator later determined that only sixty-three (63)

26

27   [2]   Ms. Lee also filed an opposition to Plaintiffs' renewed motion and filed a supplemental
brief.  Whether or not Ms. Lee has standing to object to the motion for fees, she raises arguments

28   that the Court would have raised, *sua sponte*, with Plaintiffs regarding the request to reconsider the
issue of whether the settlement is a coupon settlement.

United States District Court
Northern District of California

1   of these claims were valid.  (Docket No. 111-1, Declaration of Jennifer M. Keough Regarding

2   Voucher Distribution, ¶¶ 3-4.)  The remaining class members for whom Class Counsel had valid

3   email or direct mailing addresses -- 13,855 members -- received the 30% Voucher.  (Docket No.

4   104-6, Declaration of Jennifer Keough Regarding Voucher Redemption, ¶ 3.)

5          Three hundred and thirty-six (336) of 13,918 class members redeemed Settlement

6   Vouchers before they expired on March 25, 2015.  (Docket No. 104-7, Declaration of Glen

7   Petronaci ("Petronaci Decl."), ¶ 7, Ex. A.)  According to Mr. Petronaci, seven (7) class members,

8   redeemed $20 Vouchers and 329 redeemed 30% Vouchers.  Mr. Petronaci attests that these class

9   members saved a total of $36,103.54, or an average savings of $107.45 per Settlement Voucher.[3]

10   (*Id.*)

11          On November 14, 2013, the Court issued an Order finally approving the settlement and

12   entered a final judgment.  (Docket Nos. 92, 93.)  Ms. Lee filed an appeal, which she later

13   dismissed.

14          The Court will address additional facts as necessary in the remainder of this Order.

15                                            **ANALYSIS**

16   **A.     The Court Grants, in Part, the Request for Attorneys' Fees.**

17          In their renewed motion, Plaintiffs ask the Court to award attorneys' fees in the amount of

18   $125,000, which is almost three times the redemption value of the Settlement Vouchers.  They

19   also ask the Court to revisit its ruling that the settlement was a coupon settlement and find a

20   lodestar award is proper in light of *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934

21   (9th Cir. 2015) (hereinafter *"In re Online DVD-Rental"*).

22          According to Plaintiffs: (1) the $20 Vouchers issued in this case are "similar" to the gift

23   cards that the Ninth Circuit found were not coupons in the *In re Online-DVD Rental* case; (2) only

24   a portion of the settlement can be attributed to the 30% Vouchers, which Plaintiffs concede are

25   coupons; and (3) because the settlement is not a pure coupon settlement, the Court can issue a fee

26   award based on a lodestar calculation.

27   _____

28   [3]     Mr. Petronaci calculated the "discount" for a $20 Voucher as the full $20.00, even if the
purchase was for less than $20.00.  (*See* Petronaci Decl., Ex. A.)

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1  **1.      The Court Will Revisit the Issue of Whether This Is A Coupon Settlement.**

2  As a threshold issue, the Court must determine whether it can, and should, revisit its legal

3  determination that the settlement was a coupon settlement.  The parties agree that the ruling on the

4  motion for attorneys' fees was not an appealable order.  *See Jensen Electric Co. v. Moore,*

5  *Caldwell, Roland and Dodd, Ind.*, 873 F.2d 1327, 1329 (9th Cir. 1989); *cf. National Distribution*

6  *Agency v. Nationwide Mutual Ins. Co.*, 117 F.3d 432, 433-34 (9th Cir. 1997).  However, the ruling

7  that the settlement is a coupon settlement stands as law of the case.  Normally, the Court would be

8  "precluded from reexamining" this issue.  *See, e.g., Richardson v. United States*, 841 F.2d 993,

9  996 (9th Cir. 1988).

10  One exception to the law of the case doctrine permits a court to reconsider the issue if,

11  *inter alia*, there is an "intervening change of controlling authority ... or the previous disposition

12  was clearly erroneous and would work a manifest injustice."  *Leslie Salt Co. v. United States*, 55

13  F.3d 1388, 1393 (9th Cir. 1995); *see also Thomas v. Bible*, 982 F.2d 152, 155 (9th Cir. 1993).

14  Because the Court has not yet entered a final judgment on the issue of attorneys' fees, the Court

15  also could reconsider this issue under Northern District Civil Local Rule 7-9(b)(1), which provides

16  for reconsideration based on a material change in the law.

17  Plaintiffs argue that *In re Online DVD-Rental* is a change of controlling authority and, in

18  light of that opinion, the Court's previous ruling is clearly erroneous and would work a manifest

19  injustice.  The *In re Online DVD-Rental* case did not change existing law on how a court should

20  calculate attorneys' fees in coupon settlements under CAFA, which is set forth in *In re HP Inkjet*

21  *Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013).  In addition, the *In re HP Injket* court provided at

22  least one example of the types of benefits that could be considered coupons, notwithstanding the

23  label affixed to the benefits.  *Id.* at 1176 (describing "e-credits," that expired six months after

24  issuance, were non-transferable, and could not be used with other discounts or coupons, as a

25  "euphemism for coupons").  Further, although the court found that the gift cards at issue were not

26  subject to CAFA, it did not make a broader pronouncement about every type of gift card that

27  might be issued as part of a settlement.  *In re Online DVD-Rental*, 779 F.3d at 952.

28  The Court is not entirely persuaded that *In re Online DVD-Rental* constitutes a controlling

1    or material change in the law.  However, in the interests of justice, it will review its prior decision

2    in light of that opinion.

3              **2.        The Settlement Is a Pure Coupon Settlement.**

4              Plaintiff argue that the $20 Voucher is not a coupon.  The fact that Plaintiffs have labelled

5    this benefit as a voucher is not dispositive.  "Congress passed CAFA 'primarily to curb perceived

6    abuses in of the class action device," including "the coupon settlement, where defendants pay

7    aggrieved class members in coupons *or vouchers* but pay class counsel in cash."  *In re HP Inkjet*,

8    716 F.3d at 1177 (emphasis added) (quoting *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir.

9    2009).

10             In the *In re Online DVD-Rental* case, the plaintiffs, Netflix subscribers, and Walmart

11   entered into a settlement that gave class members the option to receive a $12 gift card to

12   Walmart.com or $12 in cash.  The gift cards could only be used at Walmart.com., did not expire,

13   were freely transferrable, and could not be resold.  The district court, over objection, found that the

14   gift cards were not coupons and awarded fees using the lodestar method.  The Ninth Circuit

15   affirmed.  *In re Online DVD-Rental*, 779 F.3d at 949-50.

16             The court began its analysis by noting that Congress did not define the "ambiguous" term

17   coupon.  It therefore looked to the legislative history for guidance about the meaning of the term.

18   *Id.* at 950.  For example, it cited the Senate Judiciary Committee Report ("Report"), which

19   provided "twenty-nine examples of problematic coupon settlements."  *Id.* (citing S.Rep. No. 109-

20   14, at 15-20).  Among those examples were settlements where plaintiffs received vouchers in

21   specified dollar amounts or, in some instances, received free merchandise.  *Id.*; *see also* S.Rep.

22   No. 109-14, at 15-20.[4]

23             The court also noted that Congress had "focuse[d] on settlements that involve a discount –

24   frequently a small one – on class members purchases from the settling defendant," which required

25   "class members to hand over even more of their own money *before* they can take advantage of the

26

27   ───────────────────
     [4] It is well established that "Congress passed CAFA 'primarily to curb perceived abuses in of the
     class action device," including "the coupon settlement, where defendants pay aggrieved class
28   members in coupons *or vouchers* but pay class counsel in cash."  *In re HP Inkjet*, 716 F.3d at 1177
     (emphasis added) (quoting *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    coupon." *Id.* at 951 (emphasis added).  The court also noted Congress' concern that the coupons

2    often were "valid only for select products or services."  *Id.*

3            The court concluded that the gift cards issued as part of the settlement did not raise the

4    types of concerns identified by Congress, because the settlement afforded "over 1 million class

5    members $12 in cash *or* $12 to spend at a low-priced retailer."  *Id.* at 950 (emphasis added).  It

6    also distinguished the gift cards from the coupons described in the Report, on the basis that, *inter*

7    *alia*, a class member "need not spend any of his or her own money and can choose from a large

8    number of potential items to purchase."  *Id.*  The court also found it significant that the gift cards

9    did not expire, and were freely transferrable.  In addition, the court stated that the fact that class

10   members had the option of obtaining cash, "undercut[] the argument that the settlement forces

11   [class members] to buy from the defendant."  *Id.* at 951-52.

12           The *In re Online DVD-Rental* court also rejected the argument that, if the court were to

13   find that the gift cards were not "coupons", future litigants could avoid CAFA's heightened

14   scrutiny merely by labeling coupons as gift cards.  The court rejected this argument in part on the

15   basis that gift cards are fundamentally distinct from coupons.  It also reasoned that district courts

16   would be capable of "ferreting out the deceitful coupon settlement that merely co-opts the term

17   'gift card' to avoid CAFA's requirements."  *Id.* at 952.

18           The court also cited to four district court decisions that had not classified gift cards as

19   coupons.  Like the gift cards at issue in the *In re Online DVD-Rental* case, in most of those cases,

20   the gift cards had no expiration date, were freely transferrable, and could only be used to purchase

21   products from the defendants.  *See, e.g., Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 246,

22   255-56 (E.D. Pa. 2011) (non-CAFA case but noting heightened scrutiny to be applied in coupon

23   settlements under CAFA); *Fernandez v. Victoria Secret Stores, LLC*, No. 06-cv-04149-MMM

24   (SHx), 2008 WL 8150856, at *2 (C.D. Cal. July 21, 2008); *Peterson v. Lowe's HIW, Inc.*, No. 11-

25   cv-01996-RS, Docket No. 46, Order Granting Unopposed Motion for Attorneys' Fees, Costs and

26   Incentive Awards at 3:2-3.[5]

27

28   _____

     [5]      The gift cards in the *Peterson* case were redeemable for cash.

1    In the fourth case, the settlement provided a cash option for some class members and

2    progressively discounted transferrable vouchers for others, which made them "theoretically …

3    convertible to cash." *In re Bishpehnol-A (BPA) Polycarbonate Plastic Products Liability*

4    *Litigation*, MDL No. 1967, Master Case No. 08-1967-MD-W-ODS, 2011 WL 1790603, at \*4.

5    The court in that case concluded that the settlement was not a coupon settlement, because, in most

6    cases, class members would be able to use the vouchers without expending their own money and

7    could use them on products other than the products at issue in the litigation. *Id.* at \*3-\*4.

8    Plaintiffs argue that the $20 Voucher is similar to the gift cards at issue in *In re Online*

9    *DVD-Rental,* because it allowed class members to obtain merchandise from Cole Haan without

10   spending their own money.[6]  Some courts have interpreted *In re Online DVD-Rental* to stand for

11   the proposition that the ability to get something for nothing distinguishes a voucher, or a gift card,

12   from a coupon. *See, e.g., Lee v. Enterprise Leasing Co. West*, No. 3:10-cv-00326-LRH-WGC,

13   2015 WL 2345540, at \*3 (D. Nev. May 15, 2015).  This Court is not persuaded that the Ninth

14   Circuit's decision rests on such a narrow distinction.  The *In re Online DVD-Rental* court noted

15   that "part of what separates a Walmart gift card from a coupon *is not merely the ability to*

16   *purchase an entire product*, as opposed to simply reducing the purchase price, but also the ability

17   to purchase one of many different types of products."  779 F.3d at 934 (emphasis added); *cf.*

18   *Redman v. Radioshack Corp.*, 768 F.3d 622, 635 (7th Cir. 2014) ("[T]he idea that a coupon is not

19   a coupon if it can ever be used to buy and entire product doesn't make any sense, certainly in

20   terms of" CAFA.).[7]

21

22   [6]    Although one of Cole Haan's attorneys has attested, on information and belief, that "Cole-
Haan sells many products that cost less than $20," neither Plaintiffs nor Cole Haan provided any
23   specific information about the number of products that would be available for purchase.  Unlike
Walmart, Cole Haan is not a low cost retailer. *Cf. Reibstein*, 761 F. Supp. 2d at 746, 755 (finding
24   that found that the gift cards were more like cash than coupons, because they could be used "for
literally thousands of products for which ordinary consumers, including class members have
25   need").

26   [7]    Plaintiffs also cite to *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015).
Plaintiffs' reliance on this case is curious.  First, as set forth above, the Seventh Circuit refused to
27   adopt a narrow definition of coupon and rejected "a proposed distinction between 'vouchers'
(good for an entire product) and 'coupons' (good for price discounts)." *In re Southwest,* 799 F.3d
28   at 706 (citing *Redman*, 768 F.3d at 636-37).  Second, although the court used the lodestar method
to calculate and award attorneys' fees, the *In re Southwest* court rejected the Ninth Circuit's

United States District Court
Northern District of California

1        In addition, the parties expressly provided for a $20 Voucher, not a gift card in the amount

2   of $20.00.  Thus, the $20 Voucher is not subject to the same types of regulations that are

3   applicable to gift cards.  *See In re Online DVD-Rental*, 799 F.3d at 952 (citing 15 U.S.C. § 1693*l*-

4   1 and noting that Section 1693*l*-1 regulates gift cards, under the "1978 Electronic Fund Transfer

5   Act and the Credit Card Accountability Responsibility  and Disclosure Act of 2009, as an

6   electronic form of cash (i.e., similar to credit or debit cards)").

7        In addition, although the $20 Vouchers were transferrable, they expired on March 26,

8   2015, six months after they were issued.  The $20 Vouchers, like the 30% Voucher also could

9   only be used once and could not be combined with any other promotional coupon or voucher.

10   (Docket No. 104-10, Declaration of Jennifer Shapiro, ¶¶ 1-4, Ex. A.)  Moreover, the parties did

11   not provide Class Members with the option to receive cash in lieu of a settlement voucher.  Each

12   of these facts distinguishes the $20 Vouchers from the gift cards at issue in *In re Online DVD-*

13   *Rental*.  The $20 Vouchers are distinguishable from the gift cards issued in the *Reibstein* case,

14   *supra*, for an additional reason.  In that case, the class was limited to Rite Aid customers who had

15   engaged in transactions at a particular store, but it does not appear that there were any limitations

16   on where the gift cards could be used.  In contrast, in this case, class members could only use the

17   $20 Voucher in a retail store.

18        Plaintiffs also argue that, as a matter of policy, it would make no sense "to find a

19   settlement providing $12 in average benefits to be clear of CAFA, but subject a settlement with

20   similar overall percentage of participating class members receiving on average over $100 in actual

21   benefits to heightened scrutiny.  ...  That would incentivize Class Counsel to merely get rid of the

22   optional coupon benefit that in reality provides a much higher benefit to the Class."  (Docket 104-

23   1, Memorandum in Support of Renewed Motion ("Plaintiffs' MPA") at 7:23-8:3.)  Arguably,

24   however, the converse is true.  That is, if the Court were to conclude that this is not a coupon

25   settlement, it could incentivize counsel in future cases to add a non-coupon option that provides

26   some minimal benefit to class members so that counsel can receive fees using the lodestar

27   _____

28   interpretation of Section 1712, as set forth in *In re HP Inkjet*.  *In re Southwest*, 799 F.3d at 707.

8

*United States District Court*
*Northern District of California*

1   method.[8]

2       For the foregoing reasons, the Court concludes that the $20 Voucher is a coupon and the

3   settlement is a "pure" coupon settlement.

4       **3.      The Court Awards $11,914.17 in Attorneys' Fees.**

5       The Court now turns to the amount of attorneys' fees to be awarded.  Because it has found

6   that the settlement is a pure coupon settlement, Section 1712(a) applies.  Pursuant to *In re HP*

7   *Inkjet,* the Court must award a reasonable contingency fee based upon the value of the coupons

8   redeemed by class members, which in this case is $36,103.54.  716 F.3d at 1184.

9       In cases involving common funds the Ninth Circuit has established "25% of the common

10  fund as a benchmark award for attorneys' fees." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029

11  (9th Cir. 1998); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting

12  that 25% is benchmark and "usual" range of awards is 20-30%); *Fernandez*, 2008 WL 8150856, at

13  *8, *11 (describing settlement providing for gift cards as a common fund settlement, but reducing

14  value of fund to determine economic value for purposes of awarding fees).  The *Fernandez* court

15  also noted that "typical contingency fee agreements provide that class counsel will recover 33% if

16  the case is resolved before trial…." *Id.*, 2008 WL 8150856, at *16 n.59 (citing Lester Brickman,

17  *Effective Hourly Rates of Contingency Fee Lawyers: Competing Data and Non-Competitive Fees*,

18  81 Wash. U.L.Q. 653, 659 n. 11).

19      In this case, Plaintiffs sought and obtained relief to address alleged violations of California

20  Civil Code 1747.08, which the California Supreme Court stated provides "robust consumer

21  protections." *Pineda v. Williams-Sonoma Stores, Inc.*, 54 Cal. 4th 524, 536 (2011).  The Court

22  also notes that the parties did engage in discovery, including depositions of Cole Haan employees,

23  and reached the settlement with the assistance of the Honorable Edward A. Infante (Ret.) of

24  JAMS.  Based on the record in this case, the Court concludes that a reasonable contingency fee

25

26  ───────────────────
    [8]     The Court is not implying that this was the parties' motivation in this case.  However,

27  Class Counsel acknowledged that they fully expected that class members would prefer the 30%
    Voucher. (*See, e.g.,* Plaintiffs' MPA at 1:17-24; Docket No. 107, Reply at 7:10-12 ("alternative

28  30% off coupon provided a better benefit to most of the" class members).)

United States District Court
Northern District of California

1    would be 33%.

2         Accordingly, the Court grants, in part, Class Counsel's request for fees, and it awards them

3    $11,914.17.

4    **B.    The Court Grants the Request for Incentive Awards.**

5         Plaintiffs also renew their request for incentive payments in the amount of $2,000.00 to be

6    awarded to each named plaintiff.  "Incentive awards are fairly typical in class action cases."

7    *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  In order to determine

8    whether incentive payments are warranted, "district courts must be vigilant in scrutinizing all

9    incentive awards to determine whether they destroy the adequacy of the class representatives. ...

10   [C]oncerns over potential conflicts may be especially pressing where … the proposed service fees

11   greatly exceed the payments to absent class members." *Radcliffe v. Experian Information*

12   *Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal citation and quotation marks

13   omitted).  In general, an incentive award is designed to "compensate class representatives for work

14   done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the

15   action, and, sometimes, to recognize their willingness to act as a private attorney general."

16   *Rodriguez*, 563 F.3d at 958-59.

17        Courts may consider the following criteria in determining whether to provide incentive

18   awards: "(1) the risk to the class representative in commencing suit, both financial and otherwise;

19   (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount

20   of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the

21   personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."

22   *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Ultimately, the

23   decision to approve such an award is a matter within the Court's discretion.  *In re Mego Fin. Corp.*

24   *Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).

25        Each of the named Plaintiffs submits a declaration, in which they document the number of

26   hours expended on this case.  Plaintiffs also attest that they assumed the risk of a judgment against

27   them and took the risk that the lawsuit could have a negative impact on future business and

28   employment opportunities, because someone might falsely conclude from this litigation that they

United States District Court
Northern District of California

10

1    are overly litigious.  (Docket No. 104-11, Declaration of Stefani Concepcion, ¶¶ 5, 7-8; Docket

2    No. 104-12, Declaration of Tammie Davis, ¶¶ 5, 7-8; Docket No. 104-13, Declaration of Valeria

3    Lletget, ¶¶ 5, 7-8.)  The Court concludes that the named Plaintiffs have adequately supported their

4    requests for incentive awards.  The amount requested is "relatively small, [and] well within the

5    usual norms of modest compensation paid to class representatives for services performed in the

6    class action."  *Netflix*, 779 F.3d at 943 (approving award of $5,000 to each of nine class

7    representatives).  When the Court considers the factors set forth above, the Court concludes that an

8    incentive award in the amount of $2000 per named Plaintiff, is reasonable.

9        Accordingly, the Court grants the request for incentive awards.

10    **C.**      **The Court Grants the Request for Costs.**

11        The Court also may reimburse Class Counsel their reasonable out-of-pocket expenses.  *See*

12    Fed. R. Civ. P. 23(h); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)

13    (approving reasonable costs in class action settlement).  Class Counsel submit breakdowns of the

14    costs incurred in connection with this case.  (Docket No. 104-2, Declaration of Gene J.

15    Stonebarger, ¶ 7; Docket No. 104-4, Declaration of James R. Patterson, ¶ 9.)  Based on these

16    declarations, Class Counsel incurred over $18,000 in costs as of the date Plaintiffs filed their

17    renewed motion.  However, they only ask the Court to award $15,000 in costs.  Although

18    Plaintiffs have not included the invoices for the litigation expenses, the Court concludes that they

19    adequately support their request and that the costs are reasonable.

20        Accordingly, the Court grants the request to award Class Counsel $15,000.00 in costs.

21                          **CONCLUSION**

22        For the foregoing reasons, the Court GRANTS, IN PART, Plaintiffs' renewed motion for

23    attorneys' fees, incentive awards, and costs.

24        **IT IS SO ORDERED.**

25    Dated: November 12, 2015

26

27                                     JEFFREY S. WHITE
                                      United States District Judge

28